## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **LEE A. CULP**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. _____ |
| | ) |
| **NORTHWEST PIPE CO.**, an Oregon | ) |
| corporation, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES

Plaintiff Lee A. Culp ("Plaintiff") brings this Complaint for Damages against Defendant

Northwest Pipe Co. ("Defendant"), and alleges and states as follows:

### Parties and Jurisdiction

1. Plaintiff is a male citizen of the United States, residing in Troy, Doniphan County, Kansas.

2. Defendant is and was at all relevant times a for-profit corporation incorporated under the laws of Oregon.

3. Defendant is and was at all relevant times registered to do business and in good standing in the State of Kansas with its principle place of business located at 5721 SE Columbia Way Suite 200, Vancouver, Washington 98661.

4. At all relevant times, Defendant employed fifteen (15) or more employees, including Plaintiff, and was engaged in interstate commerce.

5. Defendant is an employer within the meaning of the Americans with Disabilities Act, as Amended ("ADAAA"), 42 U.S.C. §§ 12101 *et seq.*

6. At all relevant times Defendant has maintained and operated a place of business at 8154 Industrial Park Ln., Atchison, Kansas 66002.

7. Defendant employed Plaintiff at their location at 8154 Industrial Park Ln., Atchison, Kansas 66002 beginning in approximately March 1999 as a groover/bundler.

8. Defendant laid Plaintiff off from employment on or around April 15, 2015, and chose to not recall him to employment at any time thereafter.

9. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

10. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## Administrative Procedures

11. On or about November 20, 2015, Plaintiff timely filed a charge of discrimination and retaliation against Defendant on the basis of Plaintiff's disability with the Equal Employment Opportunity Commission (hereinafter "EEOC") (attached as Exhibit 1 and incorporated herein by reference).

12. On or about February 29, 2016, the EEOC issued to Plaintiff his Dismissal and Notice of Rights (attached as Exhibit 2 and incorporated herein by reference), Plaintiff received the Notice on March 2, 2016, and this lawsuit was filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

13. The aforesaid charges of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC

investigation, which could reasonably be expected to have grown out of the charge of discrimination.

14. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

15. This Complaint was filed within the applicable statute of limitations.

## General Allegations Common To All Counts

16. Plaintiff began his employment with Defendant as a groover/bundler in the "re-cut" division at Defendant's Atchison, Kansas, location on or around March 21, 1999.

17. Defendant employed Plaintiff as a laborer during his employment and at all times relevant to this cause of action.

18. Plaintiff was one of about ninety-five (95) employees laid off at Defendant's Atchison, Kansas, location by Defendant on April 15, 2015.

19. Leading up to the layoff on April 15, 2015, Defendant employed approximately 18-21 employees in the "re-cut" division at its Atchison, Kansas, location.

20. Of those 18-21 employees in Defendant's "re-cut" division at its Atchison, Kansas, location, Plaintiff had a longer tenure with Defendants than all but three other employees.

21. In his approximately sixteen (16) years of employment with Defendant, Plaintiff only received one disciplinary write-up, dating back to his first year of employment.

22. On or around May 18, 2015, Plaintiff was diagnosed with colorectal cancer.

23. While Plaintiff was in the hospital for surgery related to, and immediately following the diagnosis of, his colorectal cancer, the plant manager at Defendant's Atchison, Kansas, location, Greg "Chip" Morrison ("Morrison"), came to visit him.

24. Morrison told Plaintiff, "[D]on't worry, as soon as you're released by your doctor, and we're calling people back, we'll get you back and we'll work with you on your chemo."

25. Defendant had knowledge that Plaintiff suffered from cancer as Morrison visited Plaintiff while he was in the hospital immediately following his diagnosis.

26. Plaintiff received treatment for the cancer, including surgery and chemotherapy which concluded in November of 2015.

27. As part of Plaintiff's treatment and recovery from his colorectal cancer, Plaintiff was required to wear a colostomy bag.

28. The colostomy bag sat underneath Plaintiff's clothing and did not hinder any work related physical movement or activity.

29. Plaintiff could perform all required duties of his job while wearing the colostomy bag.

30. In late June or early July 2015, Plaintiff was cleared by both his oncologist and primary care physician to return to work with the requirement that he continue to wear the colostomy bag.

31. In late June or early July 2015, Plaintiff informed Morrison that he wanted to return to work.

32. Morrison told Plaintiff that he needed to speak with Kevin Baldwin ("Baldwin"), human resources representative at Defendant's Atchison, Kansas, location, about Plaintiff's potential return to work.

33. In mid-July 2015, Defendant began calling laid off employees to return to work.

34. Upon hearing that his former co-workers were being called to return to work for Defendant, Plaintiff called Morrison multiple times to ask why he had not been returned to work.

4

35. Each time Plaintiff asked why he had not yet been called back to work after Mid-July 2015, Morrison told Plaintiff that he would need to talk to Baldwin.

36. Baldwin would tell Plaintiff that he would be called back "in the next round."

37. In early- to mid-September 2015, Plaintiff again mentioned to Morrison his desire to return to his former position with Defendant.

38. Morrison told Plaintiff that Plaintiff would "have to be 100% to return to work."

39. In response to Morrison's reference to a requirement that Plaintiff would "have to be 100% to return to work," Plaintiff asked if Morrison was referring to his cancer.

40. Morrison responded that Plaintiff had to be "100% everything," including that Plaintiff could not return to work until he no longer required his colostomy bag.

41. By mid-September 2015, Defendant had called at least 60 of the 95 laid-off employees back to work at its Atchison, Kansas, location.

42. Included in the approximately 60 employees that had been called back to work at the Atchison, Kansas, location between July and September 2015 were all but two of the 18-21 employees that had worked in the "re-cut" division prior to the April 15, 2015, layoff.

43. Despite having more seniority than all but three other employees that worked in Defendant's "re-cut" division at its Atchison, Kansas, location prior to the April 15, 2015, layoff, Plaintiff was one of the two "re-cut" division employees not called back.

44. In late-September 2015, Plaintiff contacted Baldwin to tell him that Morrison had told Plaintiff that he could not return to work at Defendant's Atchison, Kansas, location because of his cancer.

45. In late-September 2015, Plaintiff also contacted Megan Kendrick ("Kendrick"), a human resources representative at Defendant's principal place of business in Vancouver, Washington.

46. Plaintiff told Kendrick that he believed he was being discriminated against because of his cancer.

47. Plaintiff has never been called back to work for Defendant.

## COUNT I

**Violation under 42 U.S.C. §§ 12101 *et seq.***
**Failure to Accommodate**

48. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

49. At all relevant times, Plaintiff was disabled pursuant to the ADAAA because he suffered from colorectal cancer and associated complications; also, Defendant regarded the Plaintiff as having this disability and had a record of this disability; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

50. At all relevant times, Plaintiff's disability affected several major life activities including, but not limited to eating, sleeping, thinking, concentrating, eliminating or controlling bodily waste, feeling, performing manual tasks, and working, as described in the ADAAA.

51. At all relevant times, Plaintiff's disability affected several major bodily functions including, but not limited to bowel function; normal cell growth; special sense organs, including skin; and digestive functions, as described in the ADAAA.

52. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

6

53. Plaintiff requested being allowed to work while wearing a colostomy bag.

54. The above-referenced request was a reasonable accommodation that was possible for Defendant to provide.

55. Defendant refused to engage in any interactive process with Plaintiff to determine a reasonable accommodation for his disability.

56. Instead of allowing Plaintiff to work while wearing his colostomy bag, Defendant refused to call Plaintiff back to work.

57. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus, making Defendant liable for said actions under the doctrine of respondeat superior.

58. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including the failure to provide reasonable accommodations to employees with disabilities.

59. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

60. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his disability, in violation of 42 U.S.C. §§ 12101 *et seq.*

61. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as, other monetary and non-monetary benefits.

62. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional distress and related compensatory damages.

63. By failing to take prompt and effective remedial action and instead of re-employing the Plaintiff, Defendant in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

64. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

65. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II

### Violation under 42 U.S.C. §§ 12101 *et seq.*
### Disability Discrimination

66. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

67. At all relevant times, Plaintiff was disabled pursuant to the ADAAA because he suffered from colorectal cancer and associated complications; also, Defendant regarded the

8

Plaintiff as having this disability and had a record of this disability; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

68. At all relevant times, Plaintiff's disability affected several major life activities including, but not limited to eating, sleeping, thinking, concentrating, eliminating or controlling bodily waste, feeling, performing manual tasks, and working, as described in the ADAAA.

69. At all relevant times, Plaintiff's disability affected several major bodily functions including, but not limited to bowel function; normal cell growth; special sense organs, including skin; and digestive functions, as described in the ADAAA.

70. At all relevant times, Defendant was aware of Plaintiff's disability.

71. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

72. Defendant chose to call other, less-qualified employees back to work, but not Plaintiff, after a plant-wide layoff.

73. Plaintiff's disability or perceived disability was a determining factor in Defendant's decision to not call Plaintiff back to work.

74. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus, making Defendant liable for said actions under the doctrine of respondeat superior.

75. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

76. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

77. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his disability, in violation of 42 U.S.C. §§ 12101 *et seq.*

78. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

79. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional distress and related compensatory damages.

80. By failing to take prompt and effective remedial action and instead of re-employing the Plaintiff, Defendant in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

81. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

82. Plaintiff is entitled to recover from Defendant reasonable attorneys' fees.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable

attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III

### Violation under 42 U.S.C. §§ 12101 *et seq.*
### Retaliation

83. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

84. At all relevant times, Plaintiff's disability affected several major life activities including, but not limited to eating, sleeping, thinking, concentrating, eliminating or controlling bodily waste, feeling, performing manual tasks, and working, as described in the ADAAA.

85. At all relevant times, Plaintiff's disability affected several major bodily functions including, but not limited to bowel function; normal cell growth; special sense organs, including skin; and digestive functions, as described in the ADAAA.

86. At all relevant times, Defendant was aware of Plaintiff's disability.

87. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

88. On or about May 18, 2015, Plaintiff engaged in a protected activity by reporting his disability to Defendant.

89. In mid-July 2015, Plaintiff engaged in a protected activity by requesting a reasonable accommodation for such disability, namely being able to work while wearing a colostomy bag.

90. In late-September 2015, Plaintiff engaged in a protected activity by making a good faith report of discrimination based on his disability.

11

91. Since May 18, 2015, Defendant has made the repeated and continuous choice to not return Plaintiff to his employment with Defendant.

92. The fact that Plaintiff engaged in one or more protected activity was a determining factor in Defendant's choice to not return him to work.

93. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus, making Defendant liable for said actions under the doctrine of respondeat superior.

94. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation.

95. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

96. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his disability, in violation of 42 U.S.C. §§ 12101 *et seq.*

97. As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

98. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional distress and related compensatory damages.

99. By failing to take prompt and effective remedial action and instead of re-employing the Plaintiff, Defendant in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

100.     As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

101.     Plaintiff is entitled to recover from Defendant reasonable attorneys' fees.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### **Demand for Jury Trial and Designation of Place of Trial**

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

HOLLINGSHEAD, PAULUS, ECCHER & FRY

By:   /s/ Ryan M. Paulus
Ryan M. Paulus       D Kan 78276
r.paulus@hpeflaw.com
Joshua P. Wunderlich D Kan 78506
j.wunderlich@hpeflaw.com
8350 N. St. Clair Ave., Ste. 225
Kansas City, Missouri 64151
Telephone         (816) 581-4040
Facsimile         (816) 741-8889

ATTORNEYS FOR PLAINTIFF

13